1
2
3
4
5
6
7
8

# United States District Court
# Eastern District of California

9
10
11

GAGIK KARAPETYAN,                        CV 07-02261 TJH

                    Petitioner,

            v.

BEN CURRY, Warden,                            Order

                    Respondent.

17

        After the California Supreme Court denied review of the California Court of
Appeal judgment affirming Karapetyan's conviction of second-degree murder,
Karapetyan filed a *habeas* petition claiming that the court erred in giving and failing
to give correct instructions and in allowing Karapetyan's admissions as evidence for
the jury to consider.  Karapetyan, also, claims that he suffered violations of his
constitutional rights, as counsel gave him ineffective assistance.

**Natural and Probable Consequences Doctrine of Aiding and Abetting**

        The jury instructions regarding the natural and probable consequences doctrine

1    of aiding and abetting did not deny Karapetyan his rights to a jury trial and due

2    process.  Karapetyan challenged the original instruction, given orally and in writing.

3    It did not specify that the jury had to find the co-principal and Karapetyan guilty of

4    the same crime under the doctrine of natural and probable consequences.  Before the

5    jury started deliberations, the prosecutor asked for a change in the instructions to

6    indicate that the jury must find the co-principal and Karapetyan guilty of the same

7    crime.  The court gave a modified, incorrect instruction orally:

8         If you find that a co-defendant committed the crime of voluntary

9         manslaughter, then the defendant is guilty of voluntary manslaughter.

10        If you find that a co-defendant – co-principal committed the crime of

11        voluntary [sic] manslaughter, then the defendant is guilty of voluntary

12        [sic] manslaughter.

13

14        Before the jury started deliberations, the court gave the instruction correctly:

15        If you find that a co-principal committed the crime of voluntary

16        manslaughter, then the defendant is guilty of voluntary manslaughter.

17        If you find that a co-principal committed the crime of involuntary

18        manslaughter, then the defendant is guilty of involuntary manslaughter.

19   The written instruction was the same as the correct, oral instruction.  When the jury

20   asked the court about this doctrine, the court referred to the written instructions.

21

22        The jury convicted Karapetyan of second-degree murder and the co-defendant

23   of voluntary manslaughter.  The court's instructions to the jury gave three theories

24   for finding Karapetyan guilty of second-degree murder, one as a direct perpetrator

25   and two as an aider and abettor.  The jury could have convicted Karapetyan of

26   second-degree murder as a direct perpetrator and not for aiding and abetting.

1    Karapetyan contends that the jury probably did not convict Karapetyan of second-

2    degree murder as a direct perpetrator, because a witness stated that Karapetyan struck

3    the victim in the back with a knife.  Karapetyan, also, argues that he and a witness

4    saw another person with a screwdriver.  However, the victim had a possibly fatal

5    wound to his back, and the jury could have found that Karapetyan's act of striking

6    the victim in the back with a knife caused victim's death.

7

8    **Imperfect Defense of Others**

9    Since the evidence was insufficient for an instruction on imperfect defense of

10   others, the court did not deprive Karapetyan his right to a complete defense by not

11   giving the instruction.  The defense applies when one has an actual, unreasonable

12   belief he must defend another from imminent danger or death or great bodily injury.

13   *Menendez v. Terhune,* 422 F.3d 1012, 1028 (9th Cir. 2005).  Karapetyan did not

14   make a showing that he actually believed peril to be imminent.  Thus, the court did

15   not err in failing to give the instruction.  *Menendez,* 422 F.3d at 1028.

16

17   Defendants may assert inconsistent defenses.  *United States v. Demma,* 523

18   F.2d 981, 985 (9th Cir. 1975).  However, the court did not err in failing to give the

19   instruction, because there was not sufficient evidence to warrant jury consideration,

20   therefore, no instruction was required.  *Menendez,* 422 F.3d at 1028.  Karapetyan

21   did not testify that he believed that the victim would inflict great bodily injury or use

22   deadly force or that either of his sons was in danger.  He testified that he stayed in

23   a car because he was afraid someone would attack him and only tried dividing the

24   victim and his sons.

25

26   .  .  .  .  .  .  .  .

1     Error in failing to instruct on imperfect defense of others is state error alone

2  subject to a harmless error test under the California Constitution.  *People v. Randle,*

3  35 Cal. 4th 987, 1003, 28 Cal. Rptr. 3d 725, 732 (2005).  An error in a state court

4  determination of whether state law allows an instruction cannot be the basis for

5  *habeas* relief in a federal court.  *Menendez,* 422 F.3d at 1029.

6

7     Not giving an instruction proper under state law alone does not merit federal

8  *habeas* relief.  *Menendez,* 422 F.3d at 1029.  A claim that a court violated due

9  process rights by omitting an instruction requires that the error so infected the entire

10  trial that the resulting conviction violated due process.  *Menendez,* 422 F.3d at 1029.

11  Trial court findings, that evidence does not support an imperfect self-defense claim,

12  are presumed correct on federal *habeas* review.   *Menendez,* 422 F.3d at 1029.

13  Karapetyan did not demonstrate belief that his sons were in imminent peril; thus,

14  Karapetyan's due process rights were not violated.  *Menendez,* 422 F.3d at 1029.

15

16  **Appellate Opinion Upholding Admission of Karapetyan's Statement**

17     The trial court's admission of Karapetyan's pretrial statement stemming from

18  an interrogation by security guards, while Karapetyan was free to leave, did not

19  violate the Constitution.  *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 436, 16 L.

20  Ed. 2d 694 (1966).  A week after the victim died, Karapetyan walked into a sheriff

21  station lobby.   Security guards Debbie Lisey and Alvin Lynch were on duty.

22  Karapetyan put his driver's license on the counter and said he was turning himself in

23  for killing the victim.  Lisey asked when this occurred.  Karapetyan said, "Five days

24  ago."  Lisey told Karapetyan to wait and said she would be back.

25

26  .   .   .   .   .   .   .   .

1    Lynch asked Karapetyan if he had any weapons.  Karapetyan said no.  Lynch

2    patted Karapetyan down and asked where Karapetyan killed Andrey.  Karapetyan

3    said, "At an auction."  Lynch asked where the auction was but did not understand

4    Karapetyan.  Lynch asked, "How did you kill him?"  Karapetyan said, "With a

5    knife."

6

7    Karapetyan was not in custody because a reasonable person in Karapetyan's

8    position would have felt free to leave.  Based on the interrogation's objective

9    circumstances, no restraint on Karapetyan's freedom of movement to the degree

10   associated with a formal arrest occurred.  The guards' and Karapetyan's subjective

11   perceptions are irrelevant.  *Yarborough v. Alvarado*, 541 U.S. 652, 663, 124 S. Ct.

12   2140, 2148-49, 158 L. Ed. 2d 938, 950 (2004).  A custodial interrogation requiring

13   *Miranda* warnings occurs when officers question a person after he is in custody or

14   his freedom is significantly deprived.  *In re Eric J.,* 25 Cal. 3d 522, 527, 159 Cal.

15   Rptr. 317, 319 (1979).

16

17   The trial court's *Miranda* ruling, with the support of substantial evidence, was

18   not palpably erroneous.  *Eric*, 25 Cal. 3d at 527, 159 Cal. Rptr. at 319.  Karapetyan

19   voluntarily walked into a sheriff's station and placed his driver license on a counter

20   between himself and two security guards without authority to arrest.  The guards, not

21   primarily charged with enforcing criminal law, did not have to comply with *Miranda*.

22   *United States v. Eide,* 875 F.2d 1429, 1434 (9th Cir. 1989).  Thus, Karapetyan's

23   knife statements were admissible despite guard failure to give *Miranda* warnings.

24   *United States v. Birnstihl,* 441 F.2d 368, 370 (9th Cir. 1971).  Only law enforcement

25   officials must give warnings.  *Miranda,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d

26   694.

1    Karapetyan did not prove that the guards were the sheriff's agents. *Birnstihl,*
2    441 F.2d at 370.  Karapetyan did not argue that the sheriff authorized, directed, or
3    supervised guard activities, namely interrogation, or were aware of the activities.
4    *United States v. Jones,* 231 F.3d 508, 517 (9th Cir. 2000).  Karapetyan did not prove
5    a sheriff's agreement that guards would give the sheriff information obtained on the
6    sheriff's behalf.  *United States v. Busby,* 780 F.2d 804, 807 (9th Cir. 1986).

7

8    Karapetyan initiated contact with the guards.  They were not aggressive,
9    confrontational, or accusatory.  They did not use interrogation techniques to pressure
10   Karapetyan to talk.  They never told Karapetyan he was under arrest, in custody, or
11   not free to leave.  Karapetyan was not in custody, as his freedom was not restrained
12   when he made the knife statement.  *Berkemer v. McCarty,* 468 U.S. 420, 441, 104
13   S. Ct. 3138, 3151, 82 L. Ed. 2d 317, 336 (1984).

14

15   Neither guard could have decided to arrest Karapetyan before asking questions,
16   as neither had the authority to do so, and neither communicated any intention to do
17   so.  *Berkemer,* 468 U.S. at 442, 104 S. Ct. at 3151, 82 L. Ed. 2d at 336.  An
18   officer's unarticulated plans do not affect whether a person is in custody; only a
19   reasonable person's perceptions are relevant.  *Berkemer,* 468 U.S. at 442, 104 S. Ct.
20   at 3151, 82 L. Ed. 2d at 336.

21

22   Karapetyan's argument that the security officers received Karapetyan's driver's
23   license and retained it while interrogating Karapetyan does not appear in any trial
24   transcripts.   This Court decides whether the state court proceedings were
25   constitutional, based upon the evidence available at the time.

26   .  .  .  .  .  .  .  .  .

**Ineffective Assistance of Appellate Counsel**

Karapetyan's counsel was not ineffective in failing to argue the (1) missing element and ambiguity of the natural and probable consequences of aiding and abetting instructions, (2) law of the case doctrine in the motion to suppress Karapetyan's statements at trial or on appeal, and (3) the lack of defense of others theory in the instructions. Karapetyan did not meet his burden of showing a reasonable probability that results would have been different but for unprofessional counsel error. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068, 80 L. Ed. 2d 674, 693, 698 (1984). Such error does not warrant setting aside the judgment since it had no prejudicial effect on the judgment. *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2067, 80 L. Ed. 2d at 696.

Karapetyan had no legal basis to challenge the natural and probable consequences instruction, so counsel was not ineffective for failing to claim an element was missing from that instruction. Counsel did not raise the issue that the law of the case doctrine should prevent a second judge from ruling differently from the first judge. After a mistrial, a new judge may change a previous judge's ruling on a defendant's motions to suppress – if the defendant had notice and an opportunity to be heard and the revised ruling is not arbitrary or made without reason. *People v. Riva,* 112 Cal. App. 4th 981, 992, 5 Cal. Rptr. 649, 658 (2003).

Granting a new trial places the parties in the same position as if no trial had ever occurred, permitting renewal and reconsideration of motions including those to suppress under *Miranda. People v. Mattson,* 50 Cal. 3d 826, 849, 268 Cal. Rptr 802, 849 (1990). A judge can review pretrial rulings on the admissibility of evidence following a mistrial. *Riva,* 112 Cal. App. 4th at 992, 5 Cal. Rptr. at 658.

1    Karapetyan did not receive ineffective assistance of counsel because counsel
2    did not argue the doctrine of the law of the case.  The judge in the second trial
3    exercised his discretion to depart from the law of the case, as the first decision was
4    clearly erroneous.  *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir. 1997).
5    Karapetyan would not have prevailed on the issue and failed to show that counsel was
6    unreasonable in failing to raise the issue and that Karapetyan suffered prejudice.

7

8    Karapetyan had no basis to challenge the court's failure to instruct on imperfect
9    defense of others.  The appellate court correctly ruled that Karapetyan did not suffer
10   prejudice, as no evidence could have supported Karapetyan's claimed defense.
11   Counsel reasonably selected a theory of defense.  Thus, his performance was not
12   deficient, as he did not have an obligation to pursue an alternative, conflicting
13   defense.  *Phillips v. Woodward,* 267 F.3d 966, 979 (9th Cir. 2001).

14

15   Since the trial court did not err in giving and failing to give certain instructions
16   to the jury in Karapetyan's second trial and in allowing Karapetyan's admission as
17   evidence, and Karapetyan received effective assistance from counsel,

18

19   It is Ordered that the petition be, and hereby is, Denied.

20

21   Date:   July 6, 2010

22

23                                      _____
                                        Terry J. Hatter, Jr.
24                                      United States District Judge

25

26